[Civ. No. 17973. Second Dist., Div. Two. Nov. 30, 1950.]

ARNOLD J. PROVISOR, Respondent, v. ALBERT PARVIN & COMPANY, Appellant; SUN GLOW INDUSTRIES, INC., Respondent.

Raymond Wallenstein and Walter Monarch for Appellant.

Desser, Rau, Christensen & Hoffman for Respondents.

WILSON, J.—Action for money had and received. Judgment for plaintiff. Defendant appeals.

Cross-defendant Sun Glow Industries, Inc., assignor of plaintiff, is a manufacturer of furniture. Defendant Albert Parvin & Company is engaged in the business of designing, distributing and selling furniture to the hotel trade. In November, 1946, Parvin & Company placed an order with Sun Glow for 190 dressers to be manufactured according to designs and specifications submitted by Flamingo Hotel of Las Vegas, Nevada. The agreed purchase price was $6,612 f.o.b. Sun Glow's factory at Logan, Ohio, less a 2 per cent discount amounting to $132.24. It was agreed that Parvin would furnish and pay for the lacquers to be used in finishing the dressers and specially fabricated plastic drawer pulls to be attached to them. Parvin furnished lacquers of the value of $608.75, and drawer pulls costing $2,898.56. Sun Glow manufactured the dressers and shipped them to Flamingo. The latter paid freight, cartage and handling charges amounting to $1,550. Parvin promptly paid Sun Glow the agreed purchase price less 2 per cent amounting to a net of $6,479.76. The dressers were defectively manufactured and Flamingo refused to accept them. Parvin notified Sun Glow of such rejection.

At a meeting of the presidents of the two corporations, Parvin and Sun Glow, in Parvin's Chicago office on March 24, 1947, an agreement was reached which was reduced to writing in the form of a letter to Parvin signed by Sun Glow reading as follows:

"March 24, 1947.

"Albert Parvin & Company
5 South Wabash Avenue
Chicago, Illinois

Gentlemen:

"This will confirm agreement reached this day between the undersigned and your company, regarding the one hundred

ninety (190) dresser bases shipped by us to your account, The Flamingo Hotel, at Las Vegas, Nev., which dressers we understand were not made up satisfactorily. These are the dressers covered by our invoice No. 1485, dated January 22, 1947.

"We hereby agree to refund to you the entire cost of these dressers and will hold you harm free against any loss. We are notifying our coast representative to dispose of these dressers, and should he do so within thirty (30) days from this date, we will send you a check for the full purchase price paid by you. Should our representative fail to dispose of these dressers by April 25, 1947, you are then authorized to sell said dressers for our account and we, in turn, will reimburse you for any loss sustained between your original cost and the amount realized from the proceeds of sale.

"We agree that in the event a refund is due you, check will be mailed within ten days after receipt of an accounting from you.

Very truly yours,

SUN GLOW INDUSTRIES, INC.,

By Julius C. Levinson

J. C. Levinson—President."

JCL:b

On April 25, 1947, the last day of the option reserved by Sun Glow in the above letter to dispose of the dressers, they were sold to Flamingo for $4,750. On April 28 Sun Glow forwarded to Parvin its check for $6,479.76 representing the amount previously paid by Parvin to Sun Glow when the dressers were shipped by the latter to Flamingo.

Some days thereafter Parvin demanded an adjustment of the balance of its costs and expenses asserting that Sun Glow was obligated by the letter of March 24 to reimburse Parvin therefor. Having received no reply to this demand Parvin directed Flamingo not to pay to Sun Glow the $4,750 which it had agreed to pay for the dressers. Within a few days thereafter Flamingo paid that amount to Parvin.

Sun Glow having refunded to Parvin the total amount of the agreed purchase price of the dressers which Parvin had paid, and asserting that its obligations under the letter of March 24 had been fulfilled, demanded that Parvin remit to it, Sun Glow, the sum of $4,750 which Flamingo had agreed to pay to Sun Glow but had in fact paid to Parvin. Upon the latter's refusal to comply with this demand Sun Glow assigned its claim to plaintiff Provisor and this action ensued.

Parvin maintains that it should be reimbursed by Sun Glow for its entire outlay, for lacquers $608.75, drawer pulls $2,898.56, and freight, handling and cartage charges $1,550, for which Parvin had reimbursed Flamingo. By its counterclaim and cross-complaint, Parvin seeks to recover those amounts from Sun Glow.

Parvin contends that the letter of March 24 is an agreement of general indemnity and does not limit its right of recovery to the original invoice price. We do not so construe the letter. It was a compromise agreement reached after the exchange between the parties of several letters and after telephonic conversations between the presidents of the two corporations.

The letter of March 24 was prepared by the president of Parvin Company in its office and was submitted to and approved by its attorney before it was signed. The president of Sun Glow was without legal advice in the matter. Hence if there be any ambiguity or uncertainty as to the meaning of the letter it must be resolved against Parvin at whose instance it was prepared.

The letter recites that "This will confirm agreement reached this day between the undersigned [Sun Glow] and your company [Parvin] . . ." Sun Glow agrees to "refund to you [Parvin] the entire cost of these dressers . . ." It is further recited that if the dressers were sold Sun Glow was to send Parvin a check "for the full purchase price paid by you." If the dressers were not sold by Sun Glow Parvin was authorized to sell them and Sun Glow agreed to "reimburse" Parvin "for any loss sustained between *your original cost* and the amount realized from the proceeds of sale." The phrase "[we] will hold you harm free against any loss" must be construed with the other parts of the letter and must be interpreted as meaning that any loss to Parvin between the amount it had paid Sun Glow for the dressers and the amount for which they should be sold would be made up by Sun Glow. If it had been the intention to include the amount paid by Parvin for lacquers, drawer pulls and freight charges it would have been a simple matter so to declare and the letter should have so declared. Sun Glow fulfilled its agreement by remitting to Parvin after the sale of the dressers to Flamingo the full amount of the purchase price ($6,479.76) that Parvin had paid. Sun Glow having made the sale expected to receive payment of the sum of $4,750 from Flamingo and no doubt would have received a remittance of that amount had Parvin not notified Flamingo to make payment to it, Parvin.

718

As late as May, 1948, in a conversation with one Matthew Berman, Albert Parvin, president of the Parvin Company, denied he had received that amount from Flamingo and promised to pay it to Sun Glow as soon as it was received. Contrary to Parvin's denial the money had been received from Flamingo prior to that time. Parvin made no contention in his conference with Berman that his company should be reimbursed for its expenditures for lacquer, drawer pulls and freight.

Concerning Parvin's assertion that it was entitled to payment from Sun Glow for the lacquers, drawer pulls and freight charges, it was shown by an independent certified public accountant called as a witness for Parvin that the latter's books did not show any claim against Sun Glow for such items. That Parvin did not make any contention regarding these matters until Sun Glow demanded payment of the $4,750 is shown by the evidence of Sun Glow's president that in a conversation with the president of Parvin the latter said "do anything you want to do with them [the dressers]; I am through with it."

The language of the letter and the actions and statements of the parties lead only to the conclusion that the letter was not an agreement of indemnity but as above stated was a compromise of all matters in dispute between the parties after correspondence and conferences between their respective presidents.

There is no significance, as contended by Parvin, in the fact that the court made a finding that Parvin had expended the amounts above mentioned for lacquer, drawer pulls and freight. Such was the fact, but the court did not find that those amounts were chargeable to Sun Glow or that the letter was an agreement to refund them.

Defendant contends that plaintiff has not substantiated a cause of action for money had and received. Sun Glow sold the dressers to Flamingo for $4,750 and was entitled to payment of such sum. Instead of paying Sun Glow Flamingo remitted that amount to Parvin upon the latter's demand. Parvin has money belonging to Sun Glow hence the proper action is one for money had and received. Sun Glow has established its right to recover the money.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.